[Civ. No. 42719. Second Dist., Div. Two. June 14, 1974.]

BRUCE D. BECKET, Plaintiff and Appellant, v.
WELTON BECKET & ASSOCIATES et al., Defendants and Respondents.

816

**818**

## COUNSEL

Hill, Farrer & Burrill, William S. Scully, Jr., Marvin E. Garrett, M. Richardson Lynn and Zobrist, Garner & Barrett for Plaintiff and Appellant.

Latham & Watkins, John S. Welch, John R. Light and William J. Meeske for Defendants and Respondents.

## OPINION

**COMPTON, J.**—Plaintiff Bruce D. Becket appeals from an order of the superior court dismissing his complaint following the sustaining of a demurrer without leave to amend.

From the allegations of the complaint we glean the following background.

Plaintiff is the son of Welton Becket, now deceased, the owner of all the outstanding shares of stock in Welton Becket and Associates, a corporate architectural firm. Upon the death of Welton Becket, plaintiff was appointed co-executor of the estate and became a member of the board of directors of the corporation succeeding his father. He is also the single largest legatee of the stock according to the provisions of the last will and testament of Welton Becket.

Defendant MacDonald Becket is the president and chief executive officer of Welton Becket and Associates. He is also a member of the board of directors. Defendants McReynolds and Grossman are members of the board of directors.

For many years prior to his father's death in 1969, plaintiff was employed by Welton Becket and Associates as an architect. In 1970, he

assumed the job of project architect with coordinating responsibilities for the administration of architectural work and contracts.

In January of 1973, plaintiff in his capacity as co-executor of the estate of Welton Becket filed an action in the Superior Court of Los Angeles County naming as defendants Security Pacific National Bank, the co-executor, MacDonald Becket, Albert Grossman and Charles McReynolds. The complaint in that case alleged among other things breach of fiduciary duties, corporate waste and improper usurpation of corporate control. The relief sought was injunctive and declaratory in nature as well as damages. Following service of summons and complaint in that action defendant MacDonald Becket advised the plaintiff that unless he ceased and desisted from the prosecution of such action he would be discharged from his employment with Welton Becket and Associates.

Plaintiff in this action has captioned his complaint as one for injunctive relief and damages for breach of contract, intentional interference with contractual relations, and intentional interference with his pursuit of his livelihood.

Although the complaint purports to state several causes of action the pleaded operative facts point to a single cause of action based upon a number of legal theories and seeking a number of different remedies. (See *Peiser* v. *Mettler,* 50 Cal.2d 594 [328 P.2d 953, 74 A.L.R.2d 1]; *Marden* v. *Bailard,* 124 Cal.App.2d 458 [268 P.2d 809]; *Wulfjen* v. *Dolton,* 24 Cal.2d 891 [151 P.2d 846].) ■ The issue is whether the pleaded facts show the existence of a right in the plaintiff, a corresponding duty on the part of the defendant and a wrong or delict on behalf of the defendant. (*Kaufman & Broad Bldg. Co.* v. *City & Suburban Mortg. Co.,* 10 Cal.App.3d 206 [88 Cal.Rptr. 858]; *Eichler Homes of San Mateo, Inc.* v. *Superior Court,* 55 Cal.2d 845 [13 Cal.Rptr. 194, 361 P.2d 914]; *Hilltop Properties* v. *State of California,* 233 Cal.App.2d 349 [43 Cal. Rptr. 605, 37 A.L.R.3d 109].)

Plaintiff alleges that the wrong of which the defendants were guilty is the act of threatening to discharge him. Whether that act is in fact a wrong depends on whether plaintiff had a right not to be discharged and the defendants a corollary duty not to discharge him. If the right and the duty exists then the damages and various forms of relief which plaintiff seeks would flow therefrom. The answer to these questions turns on the single issue of the defendants' authority to discharge the plaintiff under the circumstances as alleged. Plaintiff concedes the existence of the authority generally but contends that in the instant case the manner in which it was exercised violated "public policy."

By paraphrasing the key allegations we outline plaintiff's case as follows: The contract between plaintiff and Welton Becket and Associates is an oral employment contract of indefinite duration which ordinarily would be terminable at the will of either party; MacDonald Becket, as president, and Albert Grossman and Charles B. McReynolds, as directors of the corporation, conspired together to effect the discharge of plaintiff in retaliation for his instituting litigation against the corporation and themselves and to coerce plaintiff into dismissing the action; as a result of this conspiracy, Grossman and McReynolds authorized MacDonald Becket to discharge plaintiff; MacDonald Becket in threatening to discharge plaintiff breached the employment contract on behalf of the corporation; such action constituted a breach and was wrongful for the reason that the threatened discharge violated public policy; because the threatened discharge was wrongful and against public policy it was beyond the scope of MacDonald Becket's authority as president of the corporation; and finally in discharging plaintiff, defendants would wrongfully prevent plaintiff from pursuing his profession during the pendency of the litigation.

We first dispose of a theory advanced by plaintiff here which was not advanced in the court below. Plaintiff would create the right and the duty by characterizing his employment as an "agency coupled with an interest."

█ If an agency or power is created for the benefit of the agent in order to protect some title or right in the agent or to secure performance to him, the agent and not the principal is the one most concerned with the agency and it is no longer then within the power of the principal to terminate that agency at will. (1 Witkin, Summary of Cal. Law (8th ed.) Agency and Employment, § 226, p. 814; *Jay* v. *Dollarhide,* 3 Cal.App.3d 1001 [84 Cal.Rptr. 538]; Civ. Code, § 2356.)

█ The Restatement of Agency, section 138, page 339, sets forth the requirements for the creation of an agency or power coupled with an interest. They are (1) that the agency be held for the benefit of the agent not the principal, (2) that the agency is created to secure the performance of a duty to the agent or to protect a title in the agent, and (3) that the agency is created at the same time that the duty or title is created or is created for consideration.

█ The complaint fails to allege facts which meet these requirements either as to time or purpose. Plaintiff's employment with Welton Becket & Associates was not provided to him as a vehicle for protecting any interest he had in the company. At the time of his employment he had no ownership interest in the company. That interest has only arisen upon the death of his father. Plaintiff has not alleged the existence of any interest other

than his stock ownership which might be protected by his employment. His employment with the company as an architect does not serve to protect his interest in the stock of the company. At least plaintiff has alleged no facts which would indicate such to be the case.

Thus we are concerned here with a simple "at will" employment contract. "An employment, having no specified term, may be terminated at the will of either party . . . ." (Lab. Code, § 2922.) ■ Such termination may be with or without cause and the motive of the employer is generally immaterial. (*Marin* v. *Jacuzzi,* 224 Cal.App.2d 549 [36 Cal. Rptr. 880]; *Mallard* v. *Boring,* 182 Cal.App.2d 390 [6 Cal.Rptr. 171].)

However plaintiff notes, and it is true, that the courts have created certain limitations on the plenary power of an employer to discharge under an "at will contract" where that discharge is in retaliation for actions of the employee which are protected by "public policy."

In *Petermann* v. *International Brotherhood of Teamsters,* 174 Cal.App. 2d 184 [344 P.2d 25], it was held that a discharge was wrongful when it was based upon the employee's refusal to commit perjury as requested by the employer. The court recognized that the fact that perjury is a criminal offense is evidence of a strong public policy and that discharge under these circumstances violated that public policy. The act of the employer in attempting to suborn perjury was itself a criminal act.

In *Glenn* v. *Clearman's Golden Cock Inn,* 192 Cal.App.2d 793 [13 Cal.Rptr. 769], the motivation for the discharge was retaliation for the plaintiff-employee engaging in union activities. There again the strong public policy promoting freedom to engage in union activities was held to override the authority of the employer to discharge. This same principle was followed in *Montalvo* v. *Zamora,* 7 Cal.App.3d 69 [86 Cal.Rptr. 401]. Finally, by analogy in *Schweiger* v. *Superior Court,* 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97], the Supreme Court found a strong public policy in statutes giving a tenant the right to repair the premises and deduct the cost from the rent. An eviction in retaliation for a tenant's exercise of that right was held to be wrongful.

In each of these cases the public policy was evidenced by either a criminal statute or a statute designed to specifically protect the rights of the employee vis-à-vis the employer, or, in the case of *Schweiger,* the tenant vis-à-vis the landlord.

Other than the general statutes prescribing the rights and duties of an executor (Prob. Code, §§ 570-589) plaintiff can point to no articulated public policy which is violated by the action of the defendants here.

■ Stated another way, there is no specific statute creating particular rights for employees who also act as executors which protects them in their relationship with their employer.

We note that plaintiff has not alleged that his instituting the action against his employer was directed or approved by the probate court. Further, the fact that the co-executor was joined as a defendant in the action implies a lack of concurrence in the action by the co-executor.

■ An executor stands in a fiduciary relationship to the heirs and has a duty to protect their legal rights in the estate. (*Estate of Erwin,* 117 Cal.App.2d 203 [255 P.2d 97]; *Estate of Turino,* 8 Cal.App.3d 642 [87 Cal.Rptr. 581].) That duty is not owed to the general public but instead is private in nature. As trustee of the estate the executor is not a public officer with a public trust. (*Fidelity & Deposit Co. of Maryland* v. *Lindholm,* 66 F.2d 56.)

The private nature of plaintiff's action as executor is underscored by the fact that he is the major beneficiary of the estate. His acceptance of the position of executor and his decision to embark on the litigation were not mandated by any law. Conversely stated, no criminal liability would have resulted from his declining to so act. The principle of *Petermann, supra,* is inapplicable. The fidelity which the employer demanded and which it had a right to expect from plaintiff was not illegal in nature.

■ The same principles are applicable to the right of a shareholder to bring a derivative action for the benefit of the corporation. We find no strong public policy therein which would insulate an employee who is also a stockholder against discharge from his employment where he has undertaken to file suit and litigate against the management of the employing entity. An employee who acquires stock in his employer does not ipso facto gain any greater right to his employment or protection against discharge than the employee who owns no stock.

The complaint fails to establish a cause of action for wrongful breach by Welton Becket and Associates of its employment contract with plaintiff.

■ Concerning the tort of interference with contractual relations it seems clear that the company Welton Becket and Associates cannot itself be chargeable with the tort of inducing a breach of its own contract. (Prosser, Law of Torts (4th ed. 1971) § 129, p. 934.) A corporation can only act through individuals. Inasmuch as we have found that the discharge of plaintiff was not a breach of the corporation's contract with plaintiff it follows that MacDonald Becket, as president and chief executive officer,

cannot be chargeable with inducing a breach of contract. (*Marin* v. *Jacuzzi, supra.*) The discharge being proper, plaintiff's legal conclusion that MacDonald Becket acted beyond his authority cannot save the complaint.

The immunity of a corporate officer such as MacDonald Becket from liability for the tort of inducing a breach of contract on behalf of the corporation is sometimes referred to as the "manager's privilege." (*Kozlowsky* v. *Westminster Nat. Bank,* 6 Cal.App.3d 593 [86 Cal.Rptr. 52].) While there is language in the cases to the effect that the existence of this privilege is a matter of proof rather than pleading (*Kozlowsky, supra; Collins* v. *Vickter Manor, Inc.,* 47 Cal.2d 875 [306 P.2d 783]; *Culcal Stylco, Inc.* v. *Vornado, Inc.,* 26 Cal.App.3d 879 [103 Cal.Rptr. 419]) the complaint here clearly establishes the existence of the privilege subject only to plaintiff's claim of "public policy" which claim we have disposed of.

The allegation that the other defendants, who are directors of the corporation, authorized the discharge of plaintiff, if anything, strengthens the defendants' position.

The allegation that the three individual defendants conspired together adds nothing to the complaint other than to create a case for vicarious liability in the event that any liability is established. (*Diodes, Inc.* v. *Franzen,* 260 Cal.App.2d 244 [67 Cal.Rptr. 19]; *Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104 [148 P.2d 9].)

The tort of interference with the pursuit of livelihood is merely a counterpart of the tort of interfering with contractual relations. In the latter, a person wrongfully induces the termination of a contract and in the former a person wrongfully prevents the creation of a new contractual opportunity. Plaintiff alleges only that discharging him from his present employment prevents him from being employed elsewhere. He has not alleged that he was prevented from realizing any reasonably probable economic benefit beyond that of his continued employment with Welton Becket and Associates (see *Campbell* v. *Rayburn,* 129 Cal.App.2d 232 [276 P.2d 671]) nor has he alleged that defendants did anything to interfere with any other prospective economic benefit other than discharge him from his present employment, an act which we have concluded was not wrongful.

No matter which theory of liability is applied, the pleaded facts do not state a cause of action since each theory must ultimately turn on the authority of the defendants to discharge plaintiff from his employment.

That authority could only, under these facts, be circumscribed by a "public policy" which we find does not exist.

The order is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied July 11, 1974, and appellant's petition for a hearing by the Supreme Court was denied August 7, 1974.