[No. D019074. Fourth Dist., Div. One. Oct. 18, 1993.]

PACIFIC LANDMARK HOTEL, LTD., et al., Plaintiffs and Appellants, v. MARRIOTT HOTELS, INC., et al., Defendants and Respondents.

616

**COUNSEL**

Lukens & Drummond, Donald F. Drummond, Adams, Duque & Hazeltine and Mitchell L. Lathrop for Plaintiffs and Appellants.

Hillyer & Irwin, Howard A. Allen and Lesa Christenson for Defendants and Respondents.

**OPINION**

**HUFFMAN, Acting P. J.**—This is an expedited appeal from an order of the trial court filed June 4, 1993, denying a preliminary injunction, the effect of which is to prevent the owners of a twin towers hotel, known as the San Diego Marriott Hotel and Marina (the Hotel), managed by Marriott Hotels, Inc. (MHI),[1] from statutorily terminating MHI's management contracts pending resolution of the owners' lawsuit against MHI for breach of those contracts and numerous other causes of action. Because the court's denial was based on its interpretation and application of Civil Code section 2356, subdivision (a)(1),[2] regarding the legal issue of whether MHI had "an agency coupled with an interest in the subject of the agency" such that the owners could not statutorily revoke or terminate MHI as their agent for purposes of

---

[1]The name of MHI, a Delaware corporation and a wholly-owned subsidiary of Marriott Corporation (Marriott), also a Delaware corporation, was changed with the California Secretary of State to Marriott International, Inc., on March 5, 1993. For purposes of this appeal, we continue to refer to MHI by its original corporate name.

[2]Civil Code section 2356, subdivision (a) states, in part, that "[u]nless the power of an agent is coupled with an interest in the subject of the agency, it is terminated by any of the following: ¶ (1) Its revocation by the principal."

All statutory references are to the Civil Code unless otherwise specified.

managing and operating the Hotel, and such issue was agreed to be determinative of the remaining issues in the lawsuit, our review necessarily involves a narrow question of pure law which we independently consider to determine whether the trial court erred. (See *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1094-1095 [271 Cal.Rptr. 44].) As we explain, the trial court's conclusion MHI had an interest in the subject of the agency in this case is erroneous as a matter of law. Accordingly, we reverse and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs/appellants Pacific Landmark Hotel, Ltd. (Landmark) and Pacific Gateway, Ltd. (Gateway) (collectively, Owners),[3] the owners of the Hotel, located on land leased from the San Diego Unified Port District, entered into a series of contracts with defendants/respondents Marriott, MHI and San Diego Hotels, Inc. (SDHI)[4] on October 7, 1987.

Two of the contracts were management agreements between Landmark and MHI and Gateway and MHI, respectively (the Management Agreements), which replaced InterContinental Hotel Corporation with MHI as the management company for the Hotel. In consideration for MHI's services as management company under the agreements (essentially identical for each tower of the Hotel), article V, section 5.01, subpart (A) of each document provided MHI "shall be entitled to (1) the Base Management Fee, and (2) thirty percent (30%) of Available Cash Flow ('Management Incentive Fee')."

In addition, the Management Agreements provided in article XXIII, section 23.05 that the "relationship of Owner and Management Company shall be that of principal and agent, and nothing contained in the Agreement shall be construed to create a lease, partnership or joint venture between them or their successors in interest. . . ." and provided in article II, section 2.01 that "Management Company [was] Owner's exclusive agent to supervise, direct and control the management and operation of the Hotel . . . [and the] performance of all activities by Management Company hereunder shall be for the account of Owner." Section 23.05 of those agreements also stated MHI's agency was "coupled with an interest and may not be terminated by Owner until the expiration of the term of the [Management] Agreement[s],

---

[3]Landmark and Gateway are limited California partnerships whose managing general partners are Torrey Hotel Enterprises, Ltd. (Torrey) and Encelia Corporation (Encelia), respectively. Douglas Manchester owns a controlling interest in each entity.

[4]SDHI is another subsidiary of Marriott and a Delaware corporation organized specifically for the purpose of making an equity investment in and loans to Owners.

except as provided in Articles XV or XVI." These articles provided for term expirations due to, among other things, condemnation, acts of God, and certain delineated defaults. The term of the Management Agreements was for 60 years.[5]

At the same time the Management Agreements were entered into, Owners entered into loan agreements with SDHI and Host International, Inc. (Host), another subsidiary of Marriott not a party to this action, which resulted in loans of $15 million and $8 million in capital contributions to Owners, in exchange for a 5 percent ownership position in Owners' limited partnerships and 95 percent of any of the partnerships' tax benefits (future tax losses and investment tax credits) on one tower and 99 percent of the tax benefits on the other for SDHI (a new general partner). The loans were secured by deeds of trust on the Hotel (in a third position after Home Savings of America, which has a first and second deed of trust on the Hotel, but is not a party to this action) and collateral assignments of the Management Agreements that could be asserted in the event of a default under the loan agreements.

On December 3, 1992, Owners filed this lawsuit against MHI, SDHI and Marriott seeking damages for, among other claims, breach of the Management Agreements. On December 31, 1992, Owners gave MHI written notice of MHI's breaches of the agreements and Owners' intention to terminate those agreements effective January 30, 1993. After sending a follow-up letter regarding termination of the agreements, MHI refused to leave the Hotel, claiming the Management Agreements are irrevocable.

At a February 23, 1993 continued hearing on Owners' application for a temporary restraining order and/or a preliminary injunction against MHI only, the trial court bifurcated for trial the legal issue of whether the Management Agreements between Owners and MHI created an ordinary agency revocable at will or one that was coupled with an interest in the subject of the agency, i.e., in the Hotel, such that the agency created was irrevocable.[6]

Trial commenced on this issue May 4, 1993, and concluded May 6, 1993, with the trial court taking the matter under submission. On May 11, 1993, the court filed a "Decision of the Court," which stated in part relevant to the bifurcated issue: "The primary legal and factual issue presented to the court

---

[5]Article IV of the agreements provided in section 4.01 for an initial term of 30 years with 3 automatic renewals for 10 years each.

[6]By the time of the bifurcated trial, a demurrer to the third amended complaint was pending. The court's ruling on that demurrer is included with the court's decision after the trial, but such is not a matter before this court on this appeal.

in this proceeding was whether or not the Management Agreements created an agency coupled with an interest or merely created an agency terminable at will. It is [Owners'] contention that the Management Agreement, although by its terms states it is creating an agency coupled with an interest, is unsupported by the facts that no interest whatsoever is created in the management entity, [MHI]. [¶] It is Defendants' position that the Management Agreement is only one of over one hundred (100) documents executed the same date, October 7, 1987, and that the entire transaction should be viewed as a whole with each document dependent upon the other. (Citing *Harm* v. *Frasher* [1960] 181 Cal. App. 2d 405 [5 Cal.Rptr. 367].) [¶] The legal positions are well set forth in the [Owners'] Trial Brief filed with the court on April 29, 1993 and the Defendants' Trial Brief filed with the court on April 23, 1993, both of which are incorporated by reference into this Decision. [¶] A daily transcript of the evidentiary testimony was requested by the parties, has been reviewed by the court and is incorporated herein by reference. [¶] Based upon the foregoing, the court finds that MHI is an agent coupled with an interest and its agency may not be terminated except under the provisions of Article XVI of the Management Agreements. Accordingly, [Owners'] Motion for a Preliminary Injunction is denied and the previously-issued stay order is vacated. [¶] In support of this conclusion, the court would like to make the following additional comments. The Management Agreements themselves provide that the agreement creates an agency coupled with an interest. The negotiating lawyer on behalf of Marriott, John Nicholson, specifically testified that this provision was negotiated with the attorney for the [Owners], Christopher B. Neils, Esq., as it was Mr. Nicholson's responsibility to be certain that none of the agreements made on October 7, 1987 would be subject to dispute. Mr. Neils did not testify in the proceedings before this court. [¶] Mr. Nicholson further testified that it is usual and customary to have a waiver provision of Civil Code Section 1542 in releases but it was not the custom and practice in business litigation to have a waiver of the provisions of Civil Code Section[s] 2355 and 2356. This factual conclusion was not disputed by the parties by way of evidence submitted to the court. Mr. Nicholson further testified that the facts, not the documents, determine the type of interest held by the parties thereto. [¶] Had the court ruled to the contrary, this litigation would have proceeded, by way of cross-complaint yet to be filed, to determine the amount of damages sustained by Defendants' interests herein. Under the court's ruling, the case will proceed to determine the amount of damages, if any, sustained by [Owners] in view of the conduct of the Defendants herein."

On May 14, 1993, Owners timely filed a written request for a statement of decision clarifying and addressing the following questions:

"1. What is the interest which [MHI] has in the agency granted MHI by the [Owners]? [ ]

"2. Did the [Owners] waive the provisions of Civil Code [sections] 2355 and 2356 and, if so, how or in what manner was the waiver made? [ ]

"3. If the interest of MHI in its agency for the [Owners] is held in an entity or individual other than MHI, what is the identity of the entity or individual holding the interest?"

On May 20, 1993, the trial court issued a "Further Statement of Decision," supplementing its earlier decision with the following:

"1. The 'interest' is the same for [Marriott] and its affiliates, including [MHI]. All of the credible evidence demonstrates this was a single transaction with a simultaneous closing in which [Marriott] and its affiliates contributed $23 million in exchange for long-term management agreements and an ownership interest in the Hotel.

"2. Civil Code Section 2355 has no relevance to the issues in this case. Civil Code Section 2356 is inapplicable since this court has found this is an agency coupled with an interest. The only evidence in this case demonstrates that a waiver is not applicable.

"3. The interest of [Marriott] and its affiliates, including [MHI], based on all the evidence is co-equal and indivisible."

Owners again objected to the court's statement of decision and requested a hearing on the matter. On June 3, 1993, the hearing was held and the court declined to change its decision. In its attempt to give Owners some additional insight into the court's ruling, it stated: "With regard to your specific question, your argument was focused upon the fact that we should just focus this on the one tree, that is, MHI, and ignore the balance of it. I chose in this case to look at the forest and take a look at the entire transaction. I don't think that you can separate out the one any more than you can separate out Manchester's interest in all of these various companies or general partnerships or entities he has. He does that for business and tax reasons, just as the defendants do. A number of entities are created for a number of business reasons. [¶] The thought process of the court was . . . I couldn't separate out MHI from all of the other Marriott interests. In other words, MHI, part of Marriott, put in 23 million dollars and is performing a service to manage these hotels and . . . that interest has to be looked at in conjunction with the entire transaction that all closed on that single day. [¶] It would be difficult

for me to answer your question. That question was posed to the lawyer for Marriott, representing Marriott's negotiating interests. He answered that question saying: 'In reviewing the transcript of it.' It was almost like he was talking about one [of the] other entities rather than MHI directly. [¶] If a reviewing court does not agree with me, they say, 'No, we have to single out these separate trees, and keep them away from the forest,' you may be right. What interest MHI had . . . [¶] clearly they have an interest as part of Marriott. Individually they may not have. This is just the way I evaluated this case. [¶] . . . [¶] . . . [I]f I were to have to describe the interest that MHI had, obviously, I could not. The [interest] involved is the 23 million dollars and the negotiated contracts in all of these deals. That is the interest. [¶] . . . [Y]our focus is on the narrow— . . . my focus is on the broader one, and one of us is right and I don't know which one it is."

The court further clarified that the wording of its decision that "[a]ccordingly, the preliminary injunction is denied," should have been that the denial "follows from the court's finding as a matter of fact and law and the circumstances that it is an agency coupled with an interest." The court explained that the particular issue regarding agency with an interest was bifurcated out because if [Owners] "won on that issue, then Marriott would have been gone in 24 hours."

On June 4, 1993, the court filed its formal order denying the preliminary injunction, specifically incorporating into it the May 11 and May 20 statements of decision, and reiterating its finding "the Management Agreements are coupled with an interest and [are] not terminable at will." Owners filed their notice of appeal that same day.

On June 8, 1993, Owners filed with this court a petition for a writ of mandamus, or in the alternative, for an order expediting the appeal. We denied the petition and ordered the appeal expedited. (Unpublished order filed June 10, 1993, in D019063 and in this case.)

## DISCUSSION

On appeal, Owners contend the trial court erred in denying the preliminary injunction against MHI, claiming MHI has no agency coupled with an interest; the court failed to address certain issues before it in the bifurcated trial concerning the nature of the interest MHI had; the court improperly disregarded the separate legal existences of MHI, SDHI and Marriott; and the court failed to follow California precedent that interprets section 2356, subdivision (a)(1) as requiring the agent's power and the interest be "united in the same person." (*Todd* v. *Superior Court of San Francisco* (1919) 181 Cal. 406, 414 [184 P. 684, 7 A.L.R. 938].) We agree.

■ Generally, the standard of review for a denial of a preliminary injunction is whether the trial court committed an abuse of discretion. (*Union Interchange, Inc.* v. *Savage* (1959) 52 Cal.2d 601, 606 [342 P.2d 249].) However, where "likelihood of prevailing on the merits depends upon a question of pure law rather than upon evidence to be introduced at a subsequent full trial[,] . . . it can sometimes be determinative over the other factor[s], . . . when [it is shown] that [a party's] interpretation is wrong as a matter of law and thus [that party] has no possibility of success on the merits." (*Hunter* v. *City of Whittier* (1989) 209 Cal.App.3d 588, 595-596 [527 Cal.Rptr. 559].)

■ The only real issue before the trial court for the bifurcated trial was whether Owners had the statutory power under section 2356, subdivision (a)(1) to terminate MHI as their agent under the Management Agreements, or conversely, whether MHI's agency was "coupled with an interest in the Hotel" so that the Management Agreements were irrevocable. Because this issue involved the interpretation of section 2356, subdivision (a)(1) and its application to the Management Agreements and the parties to those agreements, and not upon conflicting evidence to be presented in a later plenary trial, we review the matter de novo. (See *Bullock* v. *City and County of San Francisco, supra,* 221 Cal.App.3d at pp. 1094-1095.)

It is undisputed that the Management Agreements created an agency relationship between Owners as principal and MHI as agent. ■ A cardinal rule of agency law is that a "principal who employs an agent always retains the power to revoke the agency. ' "Save in the case of an agency coupled with an interest, a principal has the *power* to revoke an agent's authority at any time before the agent has completed performance." ' [Citations.]" (*Woolley* v. *Embassy Suites, Inc.* (*Embassy*) (1991) 227 Cal.App.3d 1520, 1529 [278 Cal.Rptr. 719], original italics.)

■ As for determining whether there is "a power coupled with an interest," California decisional law has consistently followed the definition of that phrase set out by Chief Justice Marshall in *Hunt* v. *Rousmanier* (1823) 21 U.S. (8 Wheat.) 174, 203 [5 L.Ed. 589]: " 'A power coupled with an interest,' is a power which accompanies, or is connected with, an interest. The power and the interest are united in the same person." (As quoted in *O'Connell* v. *Superior Court* (1935) 2 Cal.2d 418, 422 [41 P.2d 334, 97 A.L.R. 918].) While many of the older decisions have not been particularly clear on the subject, they have all agreed that an essential element of an irrevocable power is that there be a "coexisting interest in the subject of the agency." (*Capital Nat. Bk. of Sacramento* v. *Stoll* (1934) 220 Cal. 260, 264

[30 P.2d 411]; see also *Todd* v. *Superior Court of San Francisco, supra,* 181 Cal. at p. 414; *Crossin* v. *Elysian Springs Water Co.* (1930) 105 Cal.App. 449, 455 [287 P. 985]; *Lane Mortgage Co.* v. *Crenshaw* (1928) 93 Cal.App. 411, 428 [269 P. 672].) As stated by the court in *Embassy*: "For an agency to be coupled with an interest the agent must have a 'specific, present and coexisting' beneficial interest in the subject matter of the agency. [Citations.] The agency must be created for the benefit of the agent in order to protect some title or right in the subject of the agency or secure some performance to him. [Citation.] . . . Monetary compensation, in whatever form it may take, does not create a power coupled with an interest so as to make the agency irrevocable. [Citations.]" (*Embassy, supra,* 227 Cal.App.3d at p. 1532, italics omitted.)

Section 2356, subdivision (a)(1) codified in California this well-established rule that unless the power of an agent is coupled with an interest in the subject of the agency, the principal has the power to revoke the agency. This statutory power is independent and distinguishable from a contractual right to revoke an agency. Thus, even if there is no contractual right to revoke an agency, section 2356, subdivision (a)(1) gives the principal the statutory power to do so where the agency is not coupled with an interest in the subject of the agency. In *Boehm* v. *Spreckels* (1920) 183 Cal. 239, 248-249 [191 P. 5], our Supreme Court explained this concept as follows: "There is a distinction between the *power* to revoke and the *right* to revoke an agency. Except where the agent's power is coupled with an interest, the power to revoke always exists, but the right to revoke without liability for damages depends upon circumstances. [Citation.] If the right does not exist, the principal will be liable for damages upon a revocation." (Original italics.)

While the circumstances and intent of parties to a contract may be relevant to whether there is a contractual right to revoke an agency, they are not relevant to the existence of the power to revoke. As our Supreme Court stated in *Capital Nat. Bk. of Sacramento* v. *Stoll, supra,* 220 Cal. at page 265: "[W]here no specific, present property interest has been found, the courts have consistently held the agency revocable, notwithstanding the fact that the agent gave valuable consideration, and in spite of express declarations in the contract that it was coupled with an interest and irrevocable. [Citations.]" This distinction was even more recently recognized in *Embassy,* where the court stated: "Even if [a hotel management] contract did attempt to restrict the power of the owner to terminate the manager, such provision would be ineffective[, unless the agency were coupled with an interest, because the] principal's power of revocation is absolute and applies even if doing so is a

violation of the contract or the agency is characterized as 'irrevocable.'" (*Embassy*, *supra*, 227 Cal.App.3d at p. 1530.) Thus, even if the parties intended to create an irrevocable agency, one coupled with an interest, unless they do so and such an interest does in fact exist, the statutory power to revoke may be exercised. If the exercise of the statutory revocation power is contractually unjustified, damages may be in order.

**■** Moreover, while it is not necessary that the power and the interest be conferred by the same written agreement, "if they are conferred contemporaneously as one entire transaction," the power and the interest must be coupled in four ways: (1) in time, (2) in subject matter, (3) in the same person, and (4) in source. (*Crossin* v. *Elysian Springs Water Co.*, *supra*, 105 Cal.App. at pp. 454-455.)

Contrary to defendants' position that the so-called "modern" definition of agency coupled with an interest set forth in *Becket* v. *Welton Becket & Associates* (*Becket*) (1974) 39 Cal.App.3d 815, 820 [114 Cal.Rptr. 531] does not require the power and interest be coupled in the same person, the rule set forth by that court in essence means the same thing. The court in *Becket* stated: "If an agency or power is created for the benefit of the agent in order to protect some title or right in the agent or to secure performance to him, the agent and not the principal is the one most concerned with the agency and it is no longer then within the power of the principal to terminate that agency at will. [Citations.] [¶] The Restatement of Agency, section 138, page 339, sets forth the requirements for the creation of an agency or power coupled with an interest. They are (1) that the agency be held for the benefit of the agent not the principal, (2) that the agency is created to secure the performance of a duty to the agent or to protect a title in the agent, and (3) that the agency is created at the same time that the duty or title is created or is created for consideration." (*Becket*, *supra*, 39 Cal.App.3d at p. 820.) If an agency is created for the benefit of the agent and not the principal, it is in effect giving the agent an interest in the agency itself. Thus the so-called "modern" rule still requires the agent to have a " 'specific, present and coexisting' beneficial interest in the subject matter of the agency." (*Embassy*, *supra*, 227 Cal.App.3d at p. 1532.)[7]

**■** In applying the above statutory interpretation in this case to determine whether such an interest exists, we look to the entire agreement.

---

[7] We decline to take defendants' suggestion we should look to the law of other jurisdictions to determine the power and the interest need not be coupled in the same person for the agency to be irrevocable. The body of law in California is ample in this area and dispositive in this matter.

(*O'Connell* v. *Superior Court, supra,* 2 Cal.2d at p. 422.) Having done so, we find that MHI has no interest coupled with its powers as Owners' agent. The plain language of each Management Agreement provided the agreements were created for the benefit of Owners and not for MHI, SDHI or Host. The agreements also provided they were the entire agreements between MHI and Owners and superseded all earlier understandings and writings between them.

Even considering, as the trial court did, that the transactions on October 7, 1989, were part and parcel of one large business transaction, the documentary evidence showed MHI was the separate affiliate of Marriott carefully selected as the contracting party for the Management Agreements. Although it was undisputed the 1987 negotiations took place between Owners and Marriott regarding the possible operation and management of the Hotel by Marriott or some other affiliate of Marriott, rather than carry out all parts of the transaction in its name, Marriott created various agreements between Owners and different separate affiliates of Marriott. The documents clearly distinguish between SDHI as a partner in ownership agreements for the Hotel with Owners and MHI as the managing company for purposes of running the Hotel for the Owners' benefit. No provisions in any of the agreements involved in the October 7, 1987, transactions make the Management Agreements between MHI and Owners interdependent on any of the other agreements. Thus defendants' and the trial court's reliance on *Harm* v. *Frasher* (1960) 181 Cal.App.2d 405 [5 Cal.Rptr. 367], a contract interpretation case in which the numerous contracts involved there were expressly made interdependent by their terms, is inappropriate in this case.

For business reasons, Marriott chose to have the Management Agreements drafted only between MHI and Owners. MHI was not given any interest in the Hotel via any other document evidencing loans to or investments in Owners. Marriott itself is not a named party to any of the agreements with Owners executed on October 7, 1987. Instead, separately formed legal subsidiaries of Marriott, SDHI and Host acquired interests in the Hotel by way of tax benefits, ownership in the Owners' partnerships and a trust deed on the Hotel in exchange for capital contributions and loans. We assume one of the purposes of these separate corporate entities was to insulate Marriott from liability.

The bottom line, however, is that neither defendants nor the court below could identify any "interest" of MHI in the Hotel or point to any document involved in the transaction which memorialized such an interest, other than to assert MHI has an interest through "Marriott and its affiliates' " interests.

Such, however, does not recognize the separate corporate entities to this business transaction.

■ It is well recognized that the law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities. (*Cascade Energy & Metals Corp.* v. *Banks* (10th Cir. 1990) 896 F.2d 1557, 1576.) Since society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that disregard of those separate corporate entities be approached with caution. (*Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249 [1 Cal.Rptr.2d 301].) Further, the alter ego doctrine is a doctrine that is used to prevent a corporation from using its statutory separate corporate form as a shield from liability only where to recognize such would defeat the rights and equities of third persons; it is not a doctrine that allows the corporate entity to disregard its own incorporation. (*Mesler* v. *Bragg Management Co.* (1985) 39 Cal.3d 290, 300-301 [216 Cal.Rptr. 443].)

■ As the trial court noted, it was looking at the forest and not the tree. The narrow issue presented, however, concerned only the tree MHI. Thus in effect, the trial court was disregarding the separate corporate entities involved in the October 7, 1987, transactions when it found MHI had an interest in the subject of the agency. Without Owners' assertion of the doctrine of alter ego, the trial court erred in failing to treat MHI as separate from its parent corporation Marriott.

Treating the entities separately and recognizing MHI's own corporate existence, we conclude the plain language of the agreements of the October 7, 1987, transactions, which was before the trial court, did not reveal MHI had any interest in the agency created by the Management Agreements other than compensation, which is not sufficient as a matter of law to prevent Owners from exercising their statutory power as principals under section 2356, subdivision (a)(1) to revoke MHI as their agent. (*Embassy, supra,* 227 Cal.App.3d at p. 1532.)

This conclusion, however, does not end the matter. We first note that in bifurcating the trial, the trial court reserved determination of the equitable issues for a later time, after the legal issue before the court was resolved. Counsel concurred with this approach. Injunctive relief is equitable in nature and a number of equitable issues (e.g., unclean hands) remain for resolution. Moreover, MHI's trial brief raised on a number of theories the issue of Owners' standing to seek termination of the Management Agreements. The

standing issue was discussed at the hearing. Other equitable considerations may also affect the trial court's decision whether to issue the preliminary injunction. These matters were not decided by the trial court and are not now before us. Accordingly, having resolved the legal issue of the agency coupled with an interest, we reverse the order denying the preliminary injunction and remand the matter to the trial court for consideration of the reserved issues, consistent witht the principles expressed in this opinion. Upon further trial, the trial court shall then exercise its discretion to grant or deny the preliminary injunction according to the evidence presented. (*Ciani* v. *San Diego Trust & Savings Bank* (1991) 233 Cal.App.3d 1604, 1621 [285 Cal.Rptr. 699].)

## DISPOSITION

The order denying the preliminary injunction is reversed and the matter is remanded to the trial court for further proceedings consistent with the principles expressed in this opinion. Owners shall recover costs on appeal.

Froehlich, J., and Nares, J., concurred.

A petition for a rehearing was denied November 5, 1993, and November 12, 1993, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied February 10, 1994.