

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-1996

# Govt Guarantee Fund v. Hyatt Corporation

Precedential or Non-Precedential:

Docket 96-7288

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Govt Guarantee Fund v. Hyatt Corporation" (1996). *1996 Decisions.* Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

No. 96-7288


GOVERNMENT GUARANTEE FUND OF THE REPUBLIC OF FINLAND;
SAASTOPANKKIEN KESKUS-OSAKE-PANKKI (SKOPBANK);
35 ACRES ASSOCIATES; 12 ACRES ASSOCIATES; BENEFORI OY

v.

HYATT CORPORATION,

Appellant


On Appeal from the District Court of the Virgin Islands
Division of St. Thomas and St. John
(D.C. Civil Action No. 95-cv-00049)


Argued August 16, 1996

BEFORE:  GREENBERG and ALITO, Circuit Judges, and
DEBEVOISE, District Judge

(Filed: September 12, 1996)

                        Edward G. Biester, III
                        Michael M. Baylson (argued)
                        Cecelia L. Fanelli
                        Duane, Morris & Heckscher
                        4200 One Liberty Place
                        1650 Market Street
                        Philadelphia, PA  19103

                        Warren B. Cole
                        Hunter, Colianni, Cole & Turner
                        1138 King Street
                        Christiansted, St. Croix
                        U.S. Virgin Islands  00820

                           Attorneys for Appellees

                        John A. Zebedee
                        Office of James L. Hymes,
                        III
                        P.O. Box 990
                        Charlotte Amalie, Saint Thomas

U.S. Virgin Islands  00804

Mary A. McLaughlin
Michael F.R. Harris
Dechert, Price & Rhoads
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA  19103

John A. Sopuch, III
Bickel & Brewer
35 West Wacker Drive
Suite 3650
Chicago, IL  60601

William A. Brewer, III
James S. Renard (argued)
John D. van Loben Sels
Michael L. Gaubert
Jamil N. Alibhai
Bickel & Brewer
1717 Main Street
Suite 4800
Dallas, TX  75201

                    Attorneys for Appellant


OPINION OF THE COURT


GREENBERG, Circuit Judge.

## I.  INTRODUCTION

Hyatt Corporation is the manager of a resort hotel on St. John in the U.S. Virgin Islands.  Hyatt's management powers arise from agreements executed in March 1990 among Hyatt, Great Cruz Bay Development Co., Inc. ("Great Cruz"), the owner of the hotel, and Great Cruz's lender, Saastopankkien Keskus-Osake-Pankki ("Skopbank").  After Skopbank foreclosed on the property in 1991, 35 Acres Associates purchased the hotel pursuant to a judicial sale.  Immediately thereafter, 35 Acres purported to terminate Hyatt's management of the hotel, propelling the parties into this acrimonious litigation.  The district court, on cross-motions for summary judgment, entered an order granting 35 Acres' motion for partial summary judgment on April 10, 1996, thus terminating Hyatt's presence at the hotel, and ordering the parties to "work together to effect a smooth transition in the management and operation of the Hotel."  The court certified its order as a final judgment pursuant to Fed. R. Civ. P. 54(b) on May 3, 1996.

Hyatt now appeals from the district court's grant of partial summary judgment to 35 Acres.  The parties agree that

this appeal focuses only on issues concerning 35 Acres' power to terminate Hyatt's agency and 35 Acres' right of possession of the hotel and related property together with issues relating to the transition of the management of the hotel. The district court had subject matter jurisdiction under either 28 U.S.C. § 1332(a)(2) (action between citizens of a state and citizens or subjects of a foreign state) or 28 U.S.C. § 1332(a)(3) (action between citizens of different states in which citizens or subjects of a foreign state are additional parties). The amount in controversy exceeds $50,000, exclusive of interest and costs. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291 and exercise plenary review over the grant of partial summary judgment and abuse of discretion review over the court's transition order.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY
### A. Factual Background

In view of the procedural posture of the case we present the facts in a light most favorable to Hyatt. From June 1988 through March 1990 Skopbank, a Finnish corporation, loaned Great Cruz and St. John Virgin Grand Villas Associates approximately $120 million for the construction and operation of the property which became known as the "Hyatt Regency St. John at the Virgin Grand Resort." In 1989 representatives of Great Cruz approached Hyatt to enlist its assistance in addressing operational and financial problems of the resort. Great Cruz sought a professional, experienced, and financially able hotel company with a strong global brand identity and a proven ability in the Caribbean to attract business, so that the resort's value and profitability could be maximized.

Specifically, Great Cruz proposed that the resort bear the "Hyatt" and "Hyatt Regency" registered trademarks and trade names; that the resort join the "Hyatt" chain and participate in Hyatt's comprehensive and proprietary chain-wide programs and services (including, without limitation, Hyatt's global reservations system; worldwide marketing, public relations, and advertising services; employee training programs; and home office and regional sales office convention, business, and promotion services); and that Hyatt manage the resort. Great Cruz particularly sought the use of the prestigious "Hyatt" name and Hyatt's commitment to use its expertise to ensure the success of the resort. With the encouragement of Skopbank, Great Cruz was looking for a company to maximize the economic potential of the resort.

Hyatt was reticent to commit the "Hyatt" and "Hyatt Regency" names to the resort because of the resort's historically poor performance, its financial structure, and the fact that the quality and consistency of service, facilities, and amenities provided by Great Cruz fell far below Hyatt's quality standards. Thus, Hyatt believed that there was substantial economic and reputational risk in allowing the resort to be known as a "Hyatt Regency."

During the negotiations leading to the execution of the agreements, Hyatt informed Great Cruz that the "Hyatt" and "Hyatt

Regency" trademarks, service marks, and trade names were worth billions of dollars to Hyatt's owners and represented decades of time, effort, and financial risk. Hyatt's reputation as a premier resort manager was nowhere higher than in the Caribbean, where it had established itself as the predominant chain. Moreover, Hyatt informed Great Cruz that, even with Hyatt's special knowledge of resort-building and its established relationships with customers and vendors, it would take three to five years from the opening of the resort under the Hyatt name to stabilize its operations and to begin to realize the full potential of the location so that Hyatt could derive the level of financial benefits justifying its participation. Hyatt informed Great Cruz that it only would consider establishing the resort as a "Hyatt Regency" if Great Cruz agreed to conditions that would ensure Hyatt both the power to control the resort's business and an adequate share in the resort's long-term profits that Hyatt believed its contributions could generate.

Hyatt informed Great Cruz during these negotiations that it would not permit the hotel to be known as a "Hyatt" or "Hyatt Regency" or agree to the inclusion of the resort in its worldwide chain unless it also was given powers to protect its contributions to the resort. Hyatt decided that it was absolutely necessary for it to have the power to control the quality of the resort facility as well as the quality of services provided by the hotel by assuming managerial and operational responsibilities for the resort. Hyatt, Great Cruz, and Skopbank therefore agreed to structure their contracts deliberately and carefully to accomplish those objectives to protect Hyatt.

During the negotiations among Hyatt, Great Cruz, and Skopbank, Hyatt analyzed the resort's highly-leveraged financial structure and other issues associated with the resort's financial situation. With such considerations in mind, Hyatt informed Great Cruz that it was willing to consider a financial structure whereby Hyatt invested time and effort and not seek a substantial portion of its normal management fees in exchange for an interest in the enterprise affording it a return on its investment, to be taken in the form of a long-term profit participation. Thus, Hyatt explains that, in order "to protect the investments and property it would contribute as part of its undertaking to build the business of the Resort, [it] required an interest in the profits of the `Hyatt Regency St. John.'" Br. at 15. Accordingly, Hyatt demanded and Great Cruz consented to a formula under which Hyatt potentially would receive a significant return on its investment. Although, in Hyatt's assessment, the formula contained a low front-end fixed management fee, it also included a substantial back-end share of profits that the parties specifically designed to reflect Hyatt's "capital investment in the property," id., which included Hyatt's contribution of the difference between its typical market rate front-end fees and the fees applicable in this case.

Further, to protect its interests, Hyatt negotiated for and obtained a 30-year term for the management agreement between it and Great Cruz which the parties agreed could not be terminated except in strict compliance with its express

termination provisions.  Hyatt explains that, given its substantial "capital investments" in the hotel and the time required to reap a return on its investments, it was not willing to assume the risk that Great Cruz (or a subsequent owner) could revoke and terminate the agreement for reasons, or on grounds, other than those set forth in the contracts.  Id.  Hyatt informed Great Cruz that it deemed its participation in the enterprise as the clear equivalent of a cash equity investment, and Great Cruz assented to Hyatt's approach to, and view of, the transaction.

In order to protect the proprietary nature of its management methods and to avoid confusion with respect to its trademarks and trade names, Hyatt also insisted on the power to restrict the owner's right to transfer the management agreement to successors or assigns.  Thus, to secure the performance of duties owed to Hyatt, section 15.2 of the management agreement gave it the right and power to block the owner's assignment to any assignee "`engaged in the management or operation . . . of a chain (that is, five [5] or more locations) of hotels or resorts.'"  Br. at 18.  Further, Hyatt agreed to add the resort to its worldwide hotel chain and agreed to provide its comprehensive and proprietary chain services to the resort.  Many of the services that Hyatt thus committed to contribute involved confidential, proprietary, and trade secret information.

The parties eventually reached an understanding and on March 9, 1990, Great Cruz, Skopbank, and Hyatt executed a series of agreements that allow Hyatt to manage and operate the hotel. The documents included a management agreement signed by Hyatt and Great Cruz giving Hyatt complete control over the operation of the hotel for a term of 30 years, essentially limiting the owner's right to terminate the agreement to poor performance by Hyatt.  (Management Agreement at §§ 2, 4.5; app. 1809, 1836).  In return for managing the hotel, Hyatt would receive a base fee of 1.5 percent of gross revenue, as well as an incentive fee structured on positive cash flow.  Id. at 1829.  A letter agreement signed by Great Cruz and Hyatt directed Hyatt to pay Skopbank any sums due to Great Cruz under the management agreement.  Id. at 113.

Hyatt sets forth in its brief that in order "to secure its property interests and investments in the business it was to create as well as to secure the performance of certain duties owed to [it]," br. at 21–22, Great Cruz warranted and guaranteed Hyatt's continuous right to manage the resort for the duration of the term of the management agreement.  Specifically, Hyatt notes that section 7.5 of the agreement provides that "this Agreement shall not be subject to forfeiture or termination except in accordance with the provisions hereof," id. at 22; see app. at 1795, and that "Hyatt shall be entitled to operate the Hotel for the Term, and Owner shall, at no expense to Hyatt, undertake and prosecute all appropriate actions, judicial or otherwise, required to assure such right of operation to Hyatt."  Br. at 22; see app. at 1860–61.

In addition, a subordination, non-disturbance, and attornment agreement set forth the rights of the parties should Skopbank foreclose its mortgage to Great Cruz.  This agreement

included a warrant by Skopbank that the management agreement would remain undisturbed by any foreclosure or default and would continue in full force and effect as long as Hyatt was not in default.  (Subordination Agreement at §§ 2, 3; app. at 548).

In 1991, Skopbank filed a foreclosure action in the District Court of the Virgin Islands (Civ. No. 91-355) as a result of Great Cruz's default on the mortgages.  In 1992, during the pendency of the foreclosure suit, the Government Guarantee Fund of the Republic of Finland ("GGF") obtained a controlling interest in Skopbank as part of the Finnish government's bailout of the bank.

On February 21, 1995, the district court entered a consent judgment and put the hotel up for judicial sale.  On March 20, 1995, 35 Acres Associates, a Virgin Islands general partnership consisting of two Finnish corporations, purchased the hotel.  On March 21, 1995, counsel for 35 Acres wrote to Hyatt, stating that "GGF, Skopbank and 35 Acres Associates consider the Management Agreement between Hyatt Corporation ('Hyatt') and Great Cruz Bay Development Company, Inc. as void, terminated and/or expired."  Br. at 23; app. at 1401-02.  On June 8, 1995, 35 Acres wrote again, advising Hyatt that it was in wrongful possession, and demanding that it surrender possession of the hotel:

> The Hotel belongs to 35 Acres, not Hyatt.  Hyatt is trespassing on the property.  35 Acres again demands that Hyatt immediately surrender possession of the Hotel and all associated real and personal property and accounts and cooperate in an orderly transfer to 35 Acres.  We will have a transition team available on short notice.

App. at 1407.  Hyatt, however, did not surrender possession of the hotel.

### B. Procedural History

GGF and Skopbank filed suit against Hyatt (Civil No. 1995-49) on March 16, 1995, seeking a declaratory judgment finding Hyatt in breach of the management agreements and alleging various claims in tort and contract.  GGF and Skopbank, of course, sought, inter alia, a judgment declaring the management agreement terminated and thus giving it possession of the hotel. On November 8, 1995, GGF and Skopbank filed an amended complaint adding additional entities as plaintiffs, including 35 Acres.  On April 25, 1995, Hyatt sued 35 Acres (Civil No. 1995-68), and thereafter filed two amended complaints.  The second amended complaint, dated June 21, 1995, sought a judgment declaring the rights of the various parties under the management agreements, recovery for civil conspiracy, and punitive, compensatory, and consequential damages.  On June 21, 1995, the district court consolidated the two cases for trial.

At a hearing on November 17, 1995, the court took under advisement 35 Acres' motion to dismiss the second amended complaint in the Hyatt suit (Civil No. 1995-68) and denied without prejudice Hyatt's motion to strike and dismiss the GGF parties' first amended complaint in the GGF suit (Civil No.

1995-49).  See Government Guarantee Fund v. Hyatt Corp., 166 F.R.D. 321, 323 (D.V.I. 1996).  Hyatt renewed its motion to strike and dismiss on December 22, 1995.

On January 8, 1996, the district court granted 35 Acres' motion to dismiss the second amended complaint in the Hyatt suit.  See Government Guarantee Fund v. Hyatt Corp., 1996 WL 165008, at *6 (D.V.I. Jan. 8, 1996).  On January 3, 1996, 35 Acres moved for partial summary judgment against Hyatt in the GGF suit, arguing that it was entitled to possession of the hotel as a matter of law.  On January 23, 1996, Hyatt moved to amend the court's order of January 8, 1996, to permit the filing of a third amended complaint in its suit.

On March 6, 1996, the district court held a hearing on the consolidated cases.  Ruling from the bench, the court granted 35 Acres' motion for partial summary judgment, in effect granting it possession of the hotel.  The court directed the parties to work together on transferring management of the hotel.  App. at 2157.  The court denied without prejudice Hyatt's motion to dismiss the first amended complaint in the GGF suit (Civil No. 1995-49).  In the Hyatt suit (Civil No. 1995-68) the court denied Hyatt's motion to amend the court's order of January 8, 1996, and its motion to be permitted to file a third amended complaint.  The court issued a written order implementing its March 6, 1996 rulings on April 10, 1996.  The order stated that "[b]oth parties shall work together to effect a smooth transition in the management and operation of the Hotel," app. at 2199, and allowed Hyatt 10 days from the entry of the order to answer the first amended complaint in the GGF suit (Civil No. 1995-49) and assert any defenses and compulsory counterclaims thereto.  Id. at 2199-2200.  The court further ordered the Hyatt case (Civil No. 1995-68) closed and that all other pleadings filed thereafter should contain only the caption of the GGF suit (Civil No. 1995-49).  Id. at 2200.

The court issued an opinion and order on April 10, 1996, explaining its rulings from the bench on March 6, 1996.  See Government Guarantee Fund v. Hyatt Corp., 166 F.R.D. 321.  In the opinion the district court noted first that "35 Acres seeks a determination that its agency relationship with Hyatt has been terminated as a matter of law, and Hyatt must leave the premises," id., at 326, and then concluded that:

> Applying the controlling law to the undisputed facts of this case establishes that the Management Agreement created a revocable agency that ended once 35 Acres gave notice of its termination.  As terminated agent, Hyatt must leave the premises and surrender control of the Hotel to 35 Acres, its rightful owner.

Id., at 327.  Hyatt's challenge to this conclusion is at the heart of its appeal.

On April 12, 1996, 35 Acres filed a motion for entry of an order seeking the transition of management provided for in the district court's grant of partial summary judgment.  On May 3, 1996, the district court entered such an order and certified the

order of April 10, 1996, and the order of May 3, 1996, effectuating the order of April 10, 1996, as final judgments pursuant to Fed. R. Civ. P. 54(b).  On May 6, 1996, Hyatt filed a notice of appeal from the district court's May 3, 1996 Rule 54(b) order which included an appeal from the April 10, 1996 order. Hyatt also filed an emergency motion in the district court to stay enforcement of the judgment without bond or, in the alternative, for a hearing to set the amount of the supersedeas bond pursuant to Fed. R. Civ. P. 62.

Following oral argument on May 9, 1996, the district court denied Hyatt's emergency motion for a stay.  See Government Guarantee Fund v. Hyatt Corp., 1996 WL 308865, at *1 (D.V.I. May 15, 1996).  The court thereafter entered a written order denying the motion and providing that Hyatt must comply with the order of May 3, 1996, by May 14, 1996.

On May 13, 1996, Hyatt filed an emergency motion in this court to stay enforcement of the district court's judgment pending appeal.  A single judge of this court granted the motion on a temporary basis until a panel could consider the matter.  On May 20, 1996, we granted Hyatt's motion to stay enforcement of the judgment pending appeal and accelerated the parties' briefing schedule.  We also directed that following completion of the briefing the case be listed before the earliest available panel. Finally, we remanded the case to the district court to fix the amount of the supersedeas bond pursuant to Fed. R. App. P. 8(a), while retaining jurisdiction over the appeal.

On May 29, 1996, the district court held a hearing on the remand and required Hyatt to post two bonds, one in the amount of $2 million (to be posted by June 4, 1996), and the other in the amount of $11 million (to be posted by July 30, 1996), for a total bond obligation of $13 million.  The district court also held that this court's stay "should not allow Hyatt to reopen the Hotel over the objections of 35 Acres Associates."

On June 3, 1996, Hyatt filed a motion in this court to set aside or modify the district court's order setting the amount of the supersedeas bonds.  On July 3, 1996, we granted Hyatt's motion, but only "to the extent" that we vacated "so much of the order of May 31, 1996, which precluded Hyatt from reopening the hotel over the objection of 35 Acres Associates."  We denied the motion to modify the order with respect to the bonds.  We understand that Hyatt has posted the bonds.  We, however, are uncertain as to whether the hotel is open.

The parties agree that this appeal focuses only on 35 Acres' power to terminate the agency and its right to possession of the hotel and related property, as well as transition matters, irrespective of the ultimate result of the remaining litigation. Thus, we do not consider whether 35 Acres wrongfully terminated Hyatt's management rights.  We now address the merits of Hyatt's appeal.

### III.  DISCUSSION
#### A.  Burdens of Proof

We dispose of Hyatt's first argument summarily.  Hyatt argues that 35 Acres had the burden of proving the revocability

of Hyatt's agency as a matter of law in the district court, as well as the burden of proving that Hyatt did not have the right to occupy or possess the resort.  Hyatt asserts that the only evidence 35 Acres offered with respect to these two issues consisted of the following four allegations:

> (1) 35 Acres is the owner of a hotel known as the Virgin Grand Hotel on the island of St. John, U.S. Virgin Islands; (2) Hyatt Corporation purports to claim a right to act as the managing agent of 35 Acres pursuant to a Management Agreement dated March 9, 1990, between Hyatt and Great Cruz Bay Development Company, Inc.; (3) Skopbank, GGF, and 35 Acres sent a letter to Hyatt dated March 21, 1995, in which they stated that they `consider' the Management Agreement `as void, terminated and/or expired'; and (4) Hyatt refuses to vacate the premises.

Br. at 28-29 (some internal quotations omitted).

Hyatt argues that 35 Acres' motion for partial summary judgment thus attempted to "off-load its burden of proof upon Hyatt."  Br. at 29.  Hyatt asserts that 35 Acres failed to meet its burden of proving as a matter of law the following necessary elements of its claim for relief: (1) the revocability of Hyatt's agency; (2) the valid termination of that agency; and (3) the absence of any right of Hyatt to manage or occupy the resort.

We decline to treat this case as involving merely the burdens placed upon parties seeking summary judgment, and therefore will address fully the merits of the appeal considering the facts presented on the motion for partial summary judgment in the district court.  After all, the parties submitted extensive materials in the district court and we see no reason why we should not consider the record as developed.

### B.  Prima Facie Case

Hyatt's second argument, that 35 Acres failed to establish a prima facie entitlement to relief, likewise lacks substance.  Hyatt first notes that in ruling upon 35 Acres' motion for partial summary judgment, the district court applied Virgin Islands law, which provides that the "rules of the common law, as expressed in the restatements of the law . . . shall be the rules of decision in the courts of the Virgin Islands . . . in the absence of local laws to the contrary."  V.I. Code Ann. tit. 1, § 4 (1967).  Thus, the district court held that, "The Restatement (Second) of Agency (1958) is the governing law in this area."  Government Guarantee Fund v. Hyatt Corp., 166 F.R.D. at 327.

Hyatt points out that the Restatement recognizes that there are two separate and distinct types of agencies:

> The first type, often called `revocable' agencies, may be revoked by the principal at any time and for any reason.  See Restatement (Second) of Agency, § 118 and Comment b.  The second type, often called `irrevocable'

> agencies, agency powers `given as security,'
> or agencies `coupled with an interest,' may
> not be terminated at the whim of the
> principal, but may be terminated only `in
> accordance with the agreement by which the
> power was created.'  See Restatement (Second)
> of Agency, § 139 and Comment a.

Br. at 31.  Hyatt therefore argues that mere proof of the existence of a power in the form of an agency does not establish the absolute and unqualified right of the grantor to terminate the power.  Consequently mere evidence that there is an agency neither establishes the revocability of that agency nor disproves its irrevocability.  Id.  Hyatt thus claims that there was a "fundamental flaw in 35 Acres' motion for partial summary judgment" in the district court.  Id. at 32.

Further, Hyatt asserts that 35 Acres did not negate conclusively the continued existence of a principal–agent relationship with Hyatt.  Hyatt argues that a claim that an agency is irrevocable or is coupled with an interest is not an affirmative defense in an action to terminate an agency.  Thus, it contends that 35 Acres did not fulfill its burden on its motion for summary judgment seeking to terminate the agency merely by proving the existence of the agency.  Hyatt asserts that 35 Acres was required to demonstrate that Hyatt's agency was revocable, and thereby preclude the possibility that Hyatt's agency was irrevocable.

Along the same lines, Hyatt argues that 35 Acres failed to demonstrate as a matter of law that it terminated Hyatt's agency, as Hyatt claims that the letter of March 21, 1995 "does not clearly purport to constitute an act of revocation or termination, but suggests that the termination had already occurred and that the letter was merely memorializing that alleged historic fact."  Br. at 33.  Hyatt claims that the proof of 35 Acres' alleged termination of Hyatt's agency is, at best, ambiguous and inconclusive, and that courts frequently hold that the intent and effect of purported termination notices raise genuine issues of material fact precluding summary judgment.  Finally, Hyatt attacks the prima facie case presented by 35 Acres as devoid of conclusive proof of a present right in 35 Acres to exclusive possession of the resort.

We find this line of argument meritless, and are satisfied that 35 Acres met its burden in its motion for partial summary judgment of presenting a prima facie case that it was entitled to possession of the hotel as a matter of law.  SeeMatsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585, n.10, 106 S.Ct. 1348, 1355, n.10 (1986).  On the motion 35 Acres presented the management agreement which on its face merely created an agency.  We see no reason for 35 Acres to have proven at that point in the litigation that the agency itself was not irrevocable.  As to Hyatt's claim that the March 21, 1995 letter "[did] not clearly purport to constitute an act of revocation or termination," the district court noted in its January 8, 1996 memorandum that:

> Hyatt concedes that 35 Acres sent it letters

that 35 Acres 'considered Hyatt's management agreement "void, terminated and/or expired"' and demanding Hyatt `immediately surrender possession' of the Hotel.  (Second Amended Complaint at 2.)  Indisputably, such letters manifested 35 Acres' dissent to the continuance of the agency relationship with Hyatt -- all that is required for an agency to be terminated under the Restatement.  Restatement (Second) of Agency, § 118.

Government Guarantee Fund v. Hyatt Corp., 1996 WL 165008 at *3.  Surely, Hyatt cannot argue reasonably that it did not realize the March 21, 1995 letter constituted notice of termination, when it has referred to the letter as such in its own pleadings.  Furthermore, on June 9, 1995, Hyatt filed an amended complaint referring to 35 Acres' June 8, 1995 letter to Hyatt that we quoted in part above which set forth continued written demands that Hyatt quit the property, provide an accounting, and cease acting as agent for 35 Acres because its agency had been terminated.  App. at 1170, 1180, 1034.  In addition, on June 21, 1995, Hyatt filed a Second Amended Complaint that referenced a June 19, 1996 letter (app. at 1186, 1195) demanding that Hyatt cease acting as agent for 35 Acres.  App. at 1043.

Finally, Hyatt's argument that the prima facie case presented by 35 Acres was devoid of conclusive proof of 35 Acres' present right to exclusive possession of the resort is also meritless.  Hyatt has admitted that 35 Acres owns the hotel.  App. at 390.  This argument deserves no further comment.  We proceed now to Hyatt's more substantial arguments.

### C.  The Agency Relationship

Hyatt's main argument is that the district court erred in granting judgment in favor of 35 Acres because Hyatt raised genuine issues of material fact precluding summary judgment.  First we will discuss the law applicable to the termination of agency agreements, and then we will consider Hyatt's specific arguments.

### 1.  The Applicable Law

As the district court correctly noted, agency principles as expressed in the Restatements govern this case.  Section 118 of the Restatement (Second) of Agency (1958) states that an agent's "[a]uthority terminates if the principal or the agent manifests to the other dissent to its continuance."  Comment (b) explains:

The principal has power to revoke . . . although doing so is in violation of a contract between the parties and although the authority is expressed to be irrevocable.  A statement in a contract that the authority cannot be terminated by either party is effective only to create liability for its wrongful termination.

The only exception to the rule that principals may terminate an agency relationship at any time is when the authority granted to the agent is a "power given as security."

Id. §§ 138, 139.  Section 138 of the Restatement states:

> A power given as security is a power to affect the legal relations of another, created in the form of an agency authority, but held for the benefit of the power holder or a third person and given to secure the performance of a duty or to protect a title, either legal or equitable, such power being given when the duty or title is created or given for consideration.

Comment (b) to section 138 of the Restatement explains that "[a] power given as security is one held for the benefit of a person other than the power giver [i.e. principal]."  A principal can terminate an agency power given as security "only in accordance with the agreement by which the power was created." Id. § 139 cmt. a.  On the other hand, the power giver can revoke the power if it was created only for the benefit of the power giver, i.e., when there is a simple agency relationship.  If the agent has an interest in the exercise of the power only because of the compensation to which it is entitled upon its exercise, then the power is not given as security and is revocable.

A principal may grant an irrevocable agency power for the purpose either of furnishing a security to protect a debt or other duty, or facilitating the performance, effectuating the objects, or securing the benefits of a contract.  See id. § 138 cmt. c.  For example, a power given as security arises when a person manifests consent that the one to whom it is given properly can act to protect a title already in the power holder. Id. cmt. a.  Moreover, if an agent has an interest in the subject matter of the agency, as where it engages in a joint enterprise or invests in a business in which another supplies the subject matter, a power given it by the other to protect such interest is a power given as a security.  See id. cmt. b.; see also Bowling v. National Convoy & Trucking Co., 135 So. 541, 543–44 (Fla. 1931); Haft v. Haft, 671 A.2d 413, 422–23 (Del. Ch. 1995).  In any of these circumstances, a power given as a security cannot be terminated at the whim of the power giver.  See Restatement (Second) of Agency § 14H cmt. a.

The Restatement provides illustrations of a power given to protect the property interest of the power holder (i.e., the agent) in the subject matter of the agency, as well as a power given to secure a duty or obligation owed to the agent.  While the illustrations focus on the protected interest as held by the agent or power holder, it is clear that the agency is also irrevocable if made for the benefit of a third person, although the agency can be terminated with the consent of the third-party beneficiary.  Moreover, agency powers granted both for the benefit of the principal and the agent are irrevocable.  SeeRestatement (Second) of Agency § 138 cmt. d ("A person authorized to act as agent may also hold a power for his own benefit.").

An indispensable feature of a power given as security is that the agent have a proprietary interest in the res or subject matter of the agency independent of the agency relationship itself.  As the district court noted, Professor

Williston's comments on this subject are instructive:

> In order that a power may be irrevocable because it is coupled with an interest, it is necessary that the interest be in the subject matter of the power and not in the proceeds which will arise from the exercise of the power . . . .
>
> . . . [T]he person clothed with the authority must derive a present or future interest in the subject itself on which the power is to be exercised . . . . In short, the test is:
>
> Does the agent have an interest or estate in the subject matter of the agency independent of the power conferred, or does the interest or estate accrue by or after the exercise of the power conferred?
>
> If the former, it is an agency coupled with an interest . . . if the latter, it is not.

Government Guarantee Fund v. Hyatt Corp., 166 F.R.D. at 327–28, (quoting 2 Samuel Williston, A Treatise on the Law of Contracts § 280, at 300–02 (3d ed. 1959)).  Thus, in the words of the district court, "the agency relationship itself does not create the interest; the agency merely serves to protect the separately granted or created interest when the two are coupled."  Id. at 328.

### 2.  The District Court's Disposition

In its memorandum of January 8, 1996, granting 35 Acres' motion to dismiss Hyatt's complaint in Civil No. 1995–68, the district court indicated that, "[f]or Hyatt to claim that its agency authority is . . . a power given as security, it must have alleged that the agreements were entered into for [its] benefit . . . either to protect a property interest of Hyatt's in the hotel or to secure the performance of some duty or obligation owed to Hyatt."  Government Guarantee Fund v. Hyatt Corp., 1996 WL 165008, at *3.  Because Hyatt failed to allege such an interest, the district court dismissed count one of Hyatt's second amended complaint at that time.  Id.  The court thereafter held that any agency under the management agreement was revocable and had been terminated.  Id.

In its January 8, 1996 memorandum the district court first noted that Hyatt's own pleadings established that 35 Acres had terminated the agency:

> Hyatt concedes that 35 Acres sent it letters that 35 Acres 'considered Hyatt's management agreement "void, terminated and/or expired"' and demanding Hyatt `immediately surrender possession' of the Hotel.  (Second Amended Complaint at 2.)  Indisputably, such letters manifested 35 Acres' dissent to the continuance of the agency relationship with

> Hyatt –– all that is required for an agency
> to be terminated under the Restatement.
> Restatement (Second) of Agency, § 118.

Id..  The court held that Hyatt could not continue to manage the hotel:

> Thus, assuming all the facts alleged in the
> complaint are true, the relationship between
> Hyatt and 35 Acres is a simple agency; and
> Hyatt has not demonstrated any legal basis
> for a declaration that the agency has not
> been terminated or that Hyatt may continue as
> manager of the hotel.

Id..

The district court noted that it had considered Hyatt's contentions that the management agreement created an irrevocable agency coupled with an interest:  "Hyatt wants to argue that the management agreements constitute an agency coupled with an interest which cannot be summarily revoked."  Id.  The court held, however, that Hyatt failed to present any basis for such a conclusion:

> In its second amended complaint, Hyatt has
> alleged no property interest in the hotel;
> nor has Hyatt alleged that the authority was
> granted to secure the performance of any duty
> owed to it.  Hyatt's only asserted interest
> is in the compensation due it as manager of
> the hotel, the benefit to its reputation, and
> an enhanced presence in the Caribbean.  Such
> interests are ordinary incidents of an agency
> relationship and standing alone do not
> support an inference that the agreements were
> entered into for the benefit of Hyatt as
> opposed to the benefit of the owner.  In sum,
> Hyatt simply does not allege any interest in
> the hotel aside from its interest in reaping
> the benefits from acting as 35 Acres' agent.

Id.

Moreover, the district court noted that the management agreement did not even recite that it created an agency coupled with an interest.  Id. at *3 n.7.  The court concluded that: "Whether or not Hyatt breached the agreements does not change the reality that under the facts alleged by Hyatt, the agency relationship has terminated and Hyatt cannot continue acting as manager of the Hotel."  Id. at *4.

Later, at the hearing on March 6, 1996, the district court addressed 35 Acres' motion for partial summary judgment, the grant of which led to this appeal.  At the conclusion of that hearing the court stated as follows:

> I do not see any basis for changing the
> Court's previous ruling.  I haven't heard
> anything and I don't, haven't seen anything
> in Hyatt's proposed amended complaint that
> when it's read together with the management
> agreement and the other facts that are

undisputed in this case -- and those are basically as 35 Acres has stated, that they own the property, that Hyatt has no title ownership, no right of possession as a result of any ownership. It is an agent of 35 Acres only. The management agreement was the only instrument which gives them the right to be there and I don't see any reason to go outside the four corners of the management agreement. It's whatever the negotiations, whatever the intentions were, whatever the desires were, whoever came up first to me is not, does not help to explain anything in the management agreement.

. . . .

So, I will, say, reduce that to a written order as soon as possible. I would suggest that counsel get together and you work out whatever is necessary to be able to have Hyatt leave the premises in terms of any items that Mr. Cole mentioned, so that order won't be imposed on Hyatt; it will simply be an agreed-upon to the extent they can agree upon it and maybe if you can get together with Judge Barnard. And if you can't resolve it, I'll resolve it.

. . . And it should be done within good -- from Hyatt. If you don't want to do that, then you will have to do it the hard way. But I certainly think it would be in your interest to do it cooperatively. So, that is the Court's ruling.

App. at 2155-57.

In its April 10, 1996 opinion the district court issued a written confirmation of its March 6, 1996 rulings. The court referenced decisions that have held as a matter of law that chain hotel management contracts create a typical revocable agency, not an irrevocable agency coupled with an interest. Government Guarantee Fund v. Hyatt Corp., 166 F.R.D. at 329-30 (citing Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc., 23 Cal. Rptr. 2d 555 (Cal. Ct. App. 1993); Woolley v. Embassy Suites, Inc., 278 Cal. Rptr. 719 (Cal. Ct. App. 1991)). Further, the court addressed Hyatt's argument that the management agreement created some sort of "joint enterprise" between itself and the prior owner of the hotel:

Hyatt's claim of some sort of joint ventureship or enterprise is foreclosed by the unambiguous language of that document. Section 3.8 of the Management Agreement provides:

> Nothing in this Agreement contained shall constitute, or be construed to create, a partnership, joint venture or lease between Owner and Hyatt with respect to the Hotel.

166 F.R.D. at 328.

The court noted that the management agreement could not be construed as creating a new business entity because, even if Hyatt's management fee was construed as a share of the profits, Hyatt never undertook to share in the losses of any such enterprise: "In fact, the Management Agreement was structured so that Hyatt would receive a management fee even when the Hotel suffered a loss." Id.

The court also considered Hyatt's argument that the management agreement created a power given as security to protect its intellectual property, which was to be used by Hyatt in carrying out its duties on behalf of the owner. The court held that Hyatt's contentions regarding protecting its reputation and its trade name did not warrant a result any different from that in prior cases concerning chain hotel management contracts that created revocable agencies. Id. at 329 & n.21 (citing Pacific Landmark Hotel, 23 Cal. Rptr. 2d 555; Woolley v. Embassy Suites, 278 Cal. Rptr. 719). Thus, the court held that:

> The plain language of the Management Agreement shows, and the undisputed facts of this case definitively establish, that the agency was created for the benefit of the owner, not Hyatt, and that Hyatt's sole interest in the Management Agreement is its right to compensation. As such, the Management Agreement was a personal services contract which cannot be specifically enforced. Restatement of the Law (Second) Contracts, § 367(1) (1981).

166 F.R.D. at 329.

In explaining why it would be inappropriate to order specific performance of the management agreement, the district court found the rationale stated in Woolley v. Embassy Suitesconvincing:

> There are a variety of reasons why courts are loathe to order specific performance of personal services contracts. Such an order would impose upon the court the prodigious if not impossible task of passing judgment on the quality of performance. It would also run contrary to the Thirteenth Amendment's prohibition against involuntary servitude. Courts wish to avoid the friction and social costs which result when the parties are reunited in a relationship that has already failed, especially where the services involve mutual confidence and the exercise of discretionary authority. Finally, it is impractical to require judicial oversight of a contract which calls

for special knowledge, skill, or ability.
Id. at 329-30 (quoting Woolley v. Embassy Suites, 278 Cal. Rptr. at 727).

### 3.  Hyatt's Arguments on Appeal

For the most part, Hyatt's arguments on appeal are the same as those it made in the district court.  As we agree both with that court's decision and its reasoning, we only need discuss the specifics of arguments not addressed by the district court.

Hyatt argues that it presented competent evidence to the district court that demonstrated the irrevocability of its agency agreement with Great Cruz.  Specifically, Hyatt asserts that its agency "exceeds the mere management of physical property and extends to the operation of a comprehensive and complex business" that is reflected in the scope of its rights under the management agreement.  Br. at 36.  Thus, the subject matter of Hyatt's agency is "not limited to the real and personal property of the Resort, but includes the operation of the business of the Resort."  Id. at 37.

Hyatt relies on decisions of courts that have held that an irrevocable agency is created where "an agent makes a substantial contribution to or capital investment in a business enterprise while assuming significant managerial responsibilities over that business."  Br. at 38 (citing Bowling v. National Convoy & Trucking Co., 135 So. at 543; Haft v. Haft, 671 A.2d at 423); Montgomery v. Foreman, 410 So.2d 1160, 1167-68 (La. Ct. App. 1982); MacDonald v. Rosenfeld, 188 P.2d 519, 521, 528 (Cal. Ct. App. 1948); Jones v. Williams, 39 S.W. 486, 493-94 (Mo. 1897)).  Hyatt claims that it submitted overwhelming evidence in the district court of its agreement with Great Cruz to use the real property and improvements thereon to create a new business enterprise, the "Hyatt Regency St. John."  Hyatt claims that it was the catalyst in establishing that business, and that:

> Its capital contributions and investments to the business included lending the use of its registered trademarks and service marks; providing proprietary and confidential information, programs, and systems with respect to sales, marketing, and operations; and making the resort an integral member of the `Hyatt' worldwide chain of hotels and resorts.

Br. at 38.  Hyatt also claims that "to protect and secure its economic interests in the new business, Hyatt assumed control of the management of that business as well as the day-to-day operations, and thereby was invested with certain powers of agency."  Id. at 39.  According to Hyatt, those powers were granted for its benefit and, thus, are irrevocable.

Like the district court, we decline to accept Hyatt's theory that it has "proven the creation of a resort business and its contributions to and investments in that business, its profits interests therein, and its insistence upon and receipt of managerial powers to protect those contributions, investments, and interests," br. at 38 n.9, in the face of the clear language

in the management agreement that:

> Nothing in this Agreement contained shall constitute, or be construed to be or to create, a partnership, joint venture or lease between Owner and Hyatt with respect to the Hotel.

Management agreement, § 3.8; app. at 1828. Moreover, none of the cases Hyatt cites to support its argument are aligned factually with this case. See, e.g., MacDonald v. Rosenfeld, 188 P.2d at 528 ("The evidence supports the view that defendant was granted `a power coupled with an interest' in that he was given the management of the business as security for the loans he had made."); Jones v. Williams, 39 S.W. at 493 ("Under the contract, plaintiff purchased 1,667 shares of stock in the corporation, for which he paid $80,000; and, in consideration thereof, he was to have the `control and management' of the Post Dispatch for five years, at an annual salary of $10,000."); Bowling v. National Convoy & Trucking Co., 135 So. at 543 (affirming holding that agency was coupled with interest in business founded by agent); Montgomery v. Foreman, 410 So.2d at 1167 ("Thus it was contemplated that [the agent] would recoup the monies he spent in improving the property[.]"); Haft v. Haft, 671 A.2d at 423 (irrevocable stock voting proxy given as security for note and other interests retained in corporation as well as security for payment of purchase price of transfer of stock at issue). Thus, we reject as a matter of law Hyatt's argument that it possessed an irrevocable agency due to its part in the creation of a new business enterprise. Hyatt has raised no genuine issue of material fact that alters our conclusion.

Hyatt next argues that its contribution of its trademarks and trade names, chain services, and management expertise was and is "an integral and valuable part of the business known as the `Hyatt Regency St. John.'" Br. at 41. Hyatt claims that the combination of those contributions created and continue to add value to the goodwill of the business, and that the goodwill in turn is a major factor in the ability and capacity of the hotel to generate profits. Hyatt claims that to secure and protect those investments, it negotiated and acquired rights to manage the business. Therefore, Hyatt asserts that the relationship created by the agreements among the parties was an irrevocable agency which 35 Acres could not terminate except in accordance with the express termination provisions set forth in the parties' agreements.

As a matter of law, we agree with the district court that Hyatt's contribution of its trademarks and trade names, chain services, and management expertise to the hotel was merely a normal incident of an agency relationship, and did not create an irrevocable agency. Again, Hyatt has raised no genuine issue of material fact to alter our conclusion.

Hyatt next attempts to distinguish the two decisions of the California Court of Appeals on which the district court relied in ruling that Hyatt's agency is revocable. First, Hyatt explains that, in Woolley v. Embassy Suites, "Embassy Suites had a license agreement which was separate from and independent of

its management agreement and, therefore, it could not successfully argue that the managerial powers were given to it in order to protect and secure its intellectual property, which was the subject of the separate license agreement." Br. at 42. See Woolley, 278 Cal. Rptr. at 726 ("Embassy says that this agency is different because the hotels are franchised with the Embassy name and that it therefore has its own interest in their success. But the franchise agreements are severable and independent from the management contracts[.]").

Next, Hyatt attempts to distinguish Pacific Landmark Hotel by stating that in that case an irrevocable agency would have existed had there been a legal identity between the Marriott entity that managed the hotel and the Marriott entity that held an interest in the hotel business. Since that was not the case, Hyatt states that the legal separateness between the two was the sole factor in the court's refusal to find an irrevocable agency. Br. at 42; see Pacific Landmark Hotel, 23 Cal. Rptr. 2d at 563 ("[T]he trial court was disregarding the separate corporate entities . . . when it found MHI had an interest in the subject of the agency. . . . [T]he trial court erred in failing to treat MHI as separate from its parent corporation Marriott.").

Hyatt argues that the facts in this case are materially different from those in Woolley v. Embassy Suites and in Pacific Landmark Hotel. Hyatt asserts that it permitted its intellectual property (including its registered trademarks and trade names) to be used in connection with the hotel only because it insisted upon and received agency powers to manage the resort. Moreover, the entity that owns the "Hyatt" and "Hyatt Regency" trademarks and trade names and that holds an interest in the resort business known as the "Hyatt Regency St. John" is the same entity that obtained for its benefit the right to manage the resort -- namely, Hyatt Corporation. Hyatt thus claims that the two California cases are distinguishable.

We do not agree with Hyatt's reading of the two California cases. While it is true that the specific facts of the cases differ from the case before us, their legal holdings are instructive here. In Pacific Landmark Hotel even though a Marriott affiliate had invested loans of $15 million and $8 million in capital contributions, pursuant to which the affiliate received a five percent ownership interest in the limited partnerships that owned the real estate and 95-99% of the tax benefits of those partnerships, the court held as a matter of law that the management agreements did not create an agency with an interest in favor of Marriott Hotels, Inc., which was the manager. 23 Cal. Rptr. 2d at 557, 560-63.

Moreover, even though Marriott's management contracts provided for Marriott Hotels, Inc. to receive 30% of available cash flow for 60 years as part of its management fee and presumably Marriott, like Hyatt, contracted to use its trade name and trademarks in providing its management services, the court held as a matter of law that the relationship was not an irrevocable agency. 23 Cal. Rptr. 2d at 557, 562-63. Given provisions that unambiguously provided that the agreements were between principal and agent and did not create a lease,

partnership or joint venture, as a matter of law the agency could be terminated. Id. at 560-63. The court held that the absence of a specific present property interest was dispositive.

In addition, the dispute in Woolley v. Embassy Suitesinvolved termination of Embassy Suites' management of nine hotels that were under management contract, not termination of a franchise or license agreement. 278 Cal. Rptr. at 721 & n.1. Like Hyatt, Embassy Suites argued that the court should ignore the express contractual provisions negating any partnership or joint venture, but the court found those provisions dispositive. Id. at 724-26. Embassy Suites, like Hyatt, argued that the use of its trade name turned the management agreements into an agency with an interest, and the court rejected those contentions for the lack of any specific present property interest. Id. at 726. The district court accurately analyzed the effect of the case:

> Like Hyatt, the defendant in Woolley v. Embassy Suites, Inc., 278 Cal. Rptr. 719 (Cal. App. 1991), argued that its interest in the success and prestige of its trade name was sufficient to create an irrevocable agency. The Court squarely rejected that claim, noting that `the "interest" Embassy has in seeing the hotels succeed so as to enhance its reputation and prestige is not the type of . . . interest necessary to constitute an agency coupled with an interest.' Id. at 726. Hyatt attempts to distinguish Woolley by pointing to the fact that the use of the Embassy Suites trade name in that case was secured by a separate franchise agreement. In our view, this fact militates against the presence of an irrevocable agency here. If the use of Hyatt's intellectual property were protected by a franchise agreement then the Owner potentially could use Hyatt's trademarks and trade names even after the agency ended. Arguably, a separate clause linking the franchise agreement to the agency relationship might be needed to protect the agent's interest. Here, termination of the Management Agreement cancels the owner's right to use Hyatt's intellectual property.

Government Guarantee Fund v. Hyatt Corp., 166 F.R.D. at 329 n.21.

In short, we agree with the district court that the two California cases are instructive in this case and that, as a matter of law, Hyatt's interest in protecting its trademarks and service specialties is not sufficient to form an irrevocable agency. Hyatt has raised no genuine issue of material fact to alter our decision.

Hyatt next claims that it has raised genuine issues of disputed fact with regard to the "effectiveness of 35 Acres' purported termination letter of March 21, 1995." Br. at 43. As we already have indicated the district court noted that:

> Hyatt concedes that 35 Acres sent it letters that 35 Acres `considered Hyatt's management agreement "void, terminated and/or expired"' and demanding Hyatt `immediately surrender possession' of the Hotel. (Second Amended Complaint at 2.) Indisputably, such letters manifested 35 Acres' dissent to the continuance of the agency relationship with Hyatt -- all that is required for an agency to be terminated under the Restatement. Restatement (Second) of Agency, § 118.

Government Guarantee Fund v. Hyatt Corp., 1996 WL 165008, at *3. We find here no genuine issue of material fact to alter our decision.

Hyatt finally claims that 35 Acres materially breached and wrongfully repudiated the management agreement by purporting to terminate Hyatt. "The only proof in the summary judgment record showed that Hyatt complied fully with its obligations." Br. at 45. Hyatt claims that it therefore has submitted competent evidence supporting affirmative defenses. In light of our decision that Hyatt's agency was revocable, we find this argument meritless.

One final issue with respect to termination of Hyatt's management agreement deserves our attention. It is true that a subordination, non-disturbance, and attornment agreement set forth the rights of the parties should Skopbank foreclose its mortgage from Great Cruz, including a warrant by Skopbank that the management agreement would remain undisturbed by any foreclosure or default and would continue in full force and effect as long as Hyatt was not in default. (Subordination Agreement at §§ 2, 3; app. at 548). Hyatt's seeking of this subordination agreement indicates impressive foresight on its part; indeed, the subordination agreement even could be construed to indicate intent among the parties that the management agreement itself be irrevocable.

However, as noted by the district court, "management agreements between the owner of a hotel and a managing corporation do not create an agency coupled with an interest, even if the agreements state that they do." Government Guarantee Fund v. Hyatt Corp., 1996 WL 165008 at *3 n.7 (citing Woolley v. Embassy Suites, 278 Cal. Rptr. 719; Pacific Landmark Hotel, 23 Cal. Rptr. 2d 555. Surely, if agreements that by their terms are irrevocable, thus manifesting the parties' intent that they be so, are not necessarily irrevocable, intent manifested by the separate creation of a subordination agreement does not create a power coupled with an interest. Thus, while the subordination agreement may be very significant in a determination of whether 35 Acres wrongfully terminated Hyatt's management agreement, it does not affect our result here. Whether or not an agency agreement is revocable is a matter of law. See Pacific Landmark Hotel, 23 Cal. Rptr. 2d at 561 ("[E]ven if the parties intended to create an irrevocable agency, one coupled with an interest, unless they do so and such an interest does in fact exist, the statutory power to revoke may be exercised. If the exercise of

the statutory revocation power is contractually unjustified, damages may be in order."); Woolley v. Embassy Suites, 278 Cal. Rptr. at 725 ("Even if the contract did attempt to restrict the power of the owner to terminate the manager, such provision would be ineffective.  The principal's power of revocation is absolute and applies even if doing so is a violation of the contract or the agency is characterized as `irrevocable.'") (citing Restatement (Second) of Agency § 118 cmt. b).

Accordingly, we will affirm the district court's grant of 35 Acres' motion for partial summary judgment, since Hyatt has raised no genuine issue of material fact and 35 Acres is entitled to judgment as a matter of law on the issue of the management agreement's revocability.

### D.   Remedies Granted by the District Court

Hyatt's next argument is that the district court erred in granting 35 Acres relief and imposing obligations on Hyatt that neither were requested by 35 Acres nor supported in the summary judgment record.  We review issues regarding the relief fashioned by the district court for abuse of discretion only. See United States v. Triple A Mach. Shop, Inc., 857 F.2d 579, 583 (9th Cir. 1988) (affirming district court's grant of partial summary judgment and permanent injunction enjoining former lessees from remaining on property); see generally McLendon v. Continental Can Co., 908 F.2d 1171, 1177 (3d Cir. 1990).

Hyatt notes that paragraph 3 of the district court's order of May 3, 1996, requires it, among other things, to turn over to 35 Acres: keys, alarm access codes, key cards, other means of access and egress thereto, books, records, correspondence, documents, computer and electronically-maintained records, reservations information, furniture, fixtures, equipment, vehicles, documents of title and receipts, cash, coupons, instruments for the payment of money, certificates of deposit, accounts receivable, contract rights, intangible personal property, and all other personal property relating to the operation of the resort.  Br. at 45.  Hyatt argues that 35 Acres did not satisfy the burden imposed upon parties seeking mandatory injunctive relief, and that this portion of the district court's judgment should be reversed.

Further, Hyatt notes that in paragraph 5 of the May 3, 1996 order, the district court ordered that:

> Pursuant to Fed. R. Civ. P. 70, 35 Acres Associates shall be entitled to All Writs which may be necessary to effectuate the foregoing, whether by Ejectment, Abatement, Assistance, Sequestration, Execution, Garnishment, or otherwise, and the Clerk shall issue the same, as necessary, without further order of this Court.

Hyatt argues that Rule 70 does not authorize the plethora of extraordinary personal property remedies that the district court granted to 35 Acres, and that we therefore should reverse this portion of the judgment.

Finally, Hyatt notes that paragraph 3(h) of the May 3, 1996 order provides that "Hyatt Corporation may not remove any

personal property from the Hotel Property other than items of personal property belonging to individual employees of Hyatt Corporation." Br. at 46 (citing app. at 2340). Noting that, in paragraph 4, the district court did permit Hyatt to segregate, seal, and/or designate its privileged documents, proprietary commercial materials, and personal property located on the resort premises, but effectively prohibited Hyatt from removing its property except "in accordance with further Order of this Court," app. at 2341-42, Hyatt argues that nothing in the summary judgment record justifies a court order interfering with or depriving Hyatt of its rights of use, enjoyment, and possession of its own property. Hyatt therefore argues that this portion of the district court's judgment should be reversed.

After a thorough review of the record, we see nothing in the relief fashioned by the district court that we could term an abuse of that court's discretion. Obviously the termination of Hyatt's presence in the hotel raised fairly complex practical problems, and we will not fault the district court for effectuating the transition in a common sense way. Therefore, we will affirm in its entirety the judgment of the district court.

### E. Attorney's Fees

Hyatt's final issue is a challenge to the district court's statement in the memorandum accompanying its May 3, 1996 order, that, because of "Hyatt's stubborn refusal to vacate the premises," Hyatt would "bear any costs and attorney's fees incurred by 35 Acres related to its efforts in securing [the May 3, 1996 order]." Government Guarantee Fund v. Hyatt Corp., No. 1995-49, slip op. at 3 (D.V.I. May 3, 1996). Hyatt argues that the district court imposed these "sanctions" for the first time in its memorandum without any notice or hearing, implicating fundamental notions of due process. Moreover, Hyatt argues that because the district court did not identify the rule or statute under which it imposed these "sanctions," it is impossible for an appellate court to determine if the court applied the correct standard. Accordingly, Hyatt argues that we should reverse the district court's award of "sanctions" against Hyatt.

The law is clear that awards of costs and attorneys' fees are not appealable until the court determines their amount. See, e.g., Apex Fountain Sales, Inc. v. Kleinfeld, 27 F.3d 931, 935 (3d Cir. 1994); Commonwealth of Pennsylvania v. Flaherty, 983 F.2d 1267, 1276-77 (3d Cir. 1993). Consequently inasmuch as the district court has not quantified the fees and costs there is no order with respect to them that is final for the purpose of appellate review. Therefore, Hyatt's challenge to the district court's statement in its memorandum regarding the bearing of costs and attorneys' fees is premature. Accordingly, we will dismiss this part of the appeal for lack of appellate jurisdiction.

### IV. CONCLUSION

For all the foregoing reasons, we will affirm the district court's order of April 10, 1996, granting 35 Acres' motion for partial summary judgment in its entirety and the order of May 3, 1996, providing for the transition of management and will dismiss for lack of appellate jurisdiction the part of

Hyatt's appeal relating to attorneys' fees and costs.  We vacate the stay in our order of May 20, 1996.  Finally, we will remand the case to the district court for further proceedings on the remaing aspect of the case.